JUANA MEDINA VDA. DE LÓPEZ, ETC., ET AL., demandantes y recurridos, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrente.

*Número:* R-69-213 *Resuelto:* 30 de septiembre de 1975

J. F. *Rodríguez Rivera, Procurador General Interino, Gilberto Gierbolini,* y *Miriam Naveira de Rodón, Procuradores Generales, Adolfo Negrón Cruz,* y *Candita R. Orlandi, Procuradores Generales Auxiliares,* abogados del recurrente; *Nachman, Feldstein & Gelpí,* abogados de los recurridos.

PER CURIAM: Esta es una acción en daños y perjuicios por la alegada negligencia de los empleados del Hospital Univer-

sitario el cual es operado y administrado por el Departamento de Salud del Estado Libre Asociado de Puerto Rico, en relación con servicios médicos prestados al fenecido Basilio López López. La reclamación incluye los sufrimientos de la víctima, de su viuda, sus cinco hijos y una nieta.

██ Examinemos los hechos. Basilio López López, la víctima en este caso, tenía 81 años de edad a la fecha de su muerte. Para el mes de mayo de 1966 se encontraba enfermo de cuidado. Fue admitido al Centro de Salud de Cidra. De allí, por órdenes médicas, se le trasladó al Centro Médico. Ingresó originalmente en la Sala de Emergencia de dicho Centro, la cual es operada por la Corporación de Servicio del Centro Médico, instrumentalidad del Estado Libre Asociado, con personalidad jurídica para demandar y ser demandada. Allí le aplicaron dos enemas de agua. Fue examinado por varios médicos, entre otros, por el Doctor Abenamar Arrillaga, médico empleado del Hospital Universitario. El doctor Arrillaga, antes de hacer un diagnóstico definitivo, ordenó una sigmoidoscopía[1] y una enema de bario para un examen radiológico del intestino grueso. El propio Dr. Arrillaga efectuó la sigmoidoscopía hasta una profundidad de 25 centímetros. Luego el paciente fue llevado al cuarto de radiología por el Dr. Arrillaga quien le encomendó a la Dra. Lydia Nieves, residente en radiología y empleada del Hospital Universitario, que le hiciera un estudio radiológico del intestino grueso que envolvía ponerle una enema de bario. El paciente se encontraba nervioso, fatigoso e intranquilo. Tenía conectado un suero intravenoso que se le estaba aplicando. El técnico de Rayos X, Carlos Cardona Alvarado, empleado de la Corporación de Servicio al Centro Médico, comenzó a ponerle una enema de bario utilizando un pistero plástico con

---

[1] La sigmoidoscopía es la inspección del colon sigmoides por medio de la introducción por el recto de un espéculo largo, conocido por sigmoidoscopio. Véase: *Diccionario Terminológico de Ciencias Médicas Salvat*, Octava Edición.

un pequeño vulvo en la parte distal. El paciente continuaba intranquilo y se quejaba de fatiga. Se le acomodó con dos almohadas en la mesa de examen. La doctora Nieves salió de la habitación mientras el técnico introducía el pistero y regresó para efectuar el examen fluoroscópico. Ordenó que abrieran la presilla para que el bario comenzara a bajar. El paciente continuaba moviéndose pues no estaba conforme con que le hicieran el estudio. El estado de agitación del paciente aumentó notablemente, rechazó violentamente el tratamiento, se arrancó bruscamente la cánula que tenía introducida en el ano y se levantó de la mesa donde lo tenían acostado. Fue imposible practicarle el examen radiológico ordenado. Los familiares del paciente no estuvieron satisfechos con la atención que recibía en la Sala de Emergencia, por lo que lo trasladaron al Hospital Presbiteriano. Fue ingresado en el Hospital Presbiteriano donde falleció pocos días después. La causa de la muerte fue una peritonitis ocasionada por la entrada de bario en la cavidad abdominal debido a una ruptura del recto. En opinión del patólogo, doctor Marino Sorvill, el bario que penetró en la cavidad abdominal entró directamente de la cánula a dicha cavidad.

La Procuradora General sostiene que el Estado Libre Asociado de Puerto Rico no responde por la alegada negligencia del técnico Carlos Cardona, por ser éste un empleado de la Corporación de Servicio del Centro Médico, corporación pública con personalidad jurídica propia, de cuyas actuaciones no responde el Estado. El tribunal de instancia así lo reconoció (véase 24 L.P.R.A. secs. 49a, 49d y 49e(f) y (r)), pero impuso responsabilidad al Estado bajo la teoría desarrollada en las jurisdicciones de derecho común denominada "doctrina de capitán de barco" (*captain of the ship doctrine*), al entender que la doctora Nieves, empleada del Estado, supervisaba directamente al técnico en la aplicación de la enema de bario. La Procuradora General ataca la aplicación de dicha doctrina en nuestro ordenamiento jurídico

arguyendo, entre otras cosas, que aun en la jurisdicción donde se aplica constituye un punto de vista minoritario. También argumenta la Procuradora General que dicha doctrina sólo se ha aplicado a situaciones de intervenciones quirúrgicas para responsabilizar al cirujano a cargo de la operación por los actos negligentes de las personas que lo asisten en la intervención.

■ Es innecesario resolver aquí la adopción o no en Puerto Rico de la doctrina de capitán de barco, [2] puesto que estimamos que la prueba de los demandantes fue insuficiente para rebatir la presunción de cuidado razonable al paciente.

La prueba permite inferir varias causas probables del daño—el rompimiento del recto—que permitió la entrada del bario en la cavidad abdominal que resultó en la peritonitis. El rompimiento del recto pudo haber sido ocasionado por: (1) las enemas de agua, (2) la sigmoidoscopía, (3) la aplicación de la enema de bario, o (4) el movimiento brusco e incontrolable del propio paciente al sacarse la cánula que tenía introducida en el recto. En los dos primeros casos se podría inferir negligencia de las personas que administraron y efectuaron dichos tratamientos. En los últimos dos casos, la ruptura del recto puede haber sido consecuencia del descuido del técnico de Rayos X o de la conducta violenta del propio paciente. Si se debiese a los actos del paciente no habría responsabilidad de parte de las personas que intervinieron con él y, por ende, tampoco la tendría el Estado Libre Asociado. Tal conducta violenta era razonablemente imprevisible para la doctora Nieves puesto que el paciente había sido sometido previamente, ese mismo día y pocas horas antes, a dos enemas de agua y una sigmoidoscopía hasta una profundidad de 25 centímetros sin complicaciones de clase alguna. Asimis-

---

[2] Se conoce también esta teoría como doctrina de la sala de operaciones (*operating room doctrine*).

mo la intranquilidad que mostraba el paciente en la Sala de Rayos X se debió a una dificultad respiratoria que fue controlada al colocarle unas almohadas debajo de su cabeza lo cual le facilitó la libre y cómoda respiración.

La relación de causalidad entre las actuaciones de los empleados del Hospital Universitario y el rompimiento del recto del paciente es una mera especulación o conjetura entre varias causas probables del daño, ya que la que mayor probabilidad tuvo de causar el daño fue la actuación violenta del propio paciente.

 Es norma reiterada por este Tribunal en casos de responsabilidad profesional médica, la presunción de que el médico ha observado un grado razonable de cuidado y atención en la administración de tratamiento médico y que los exámenes practicados al paciente han sido adecuados. Corresponde al reclamante controvertir tal presunción con prueba que demuestre algo más que una mera posibilidad de que el daño se debió al incumplimiento por parte del médico de su obligación profesional. Si de la evidencia surgen varias causas probables del daño, no puede imponérsele responsabilidad al médico, a menos que del examen de la totalidad de la prueba surja que su actuación negligente es la que mayores probabilidades tiene de haber causado el daño. *Reyes* v. *Phoenix Assurance Co.*, 100 D.P.R. 871 (1972), cita precisa a la pág. 876; *Rivera* v. *E.L.A.*, 99 D.P.R. 890 (1971), cita precisa a las págs. 898–99; *Ramos Orengo* v. *La Capital*, 88 D.P.R. 315 (1963), cita precisa a la pág. 328; *Sáez* v. *Municipio de Ponce*, 84 D.P.R. 535 (1962), cita precisa a las págs. 543–44; *Rivera* v. *Dunscombe*, 73 D.P.R. 819 (1952), cita precisa a las págs. 838–39. La relación de causalidad no puede establecerse a base de especulaciones o conjeturas sino al igual que todo caso civil, por la preponderancia de la evidencia. *Rivera* v. *E.L.A.*, supra; *Sáez* v. *Municipio de Ponce*, supra. Los demandantes no probaron la negligencia; y por el contrario la

mayor probabilidad del accidente es atribuible a la conducta del propio paciente.

*Se revocará la sentencia recurrida.*