Francisco Rosado Rosado y Otros, demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico y/o Antonio de la Cruz, demandados y recurrentes.

*Número:* R-76-150          *Resuelto:* 20 de junio de 1979

*Miriam Naveira de Rodón* y *Héctor A. Colón Cruz, Procuradores Generales, Roberto Armstrong, Jr., Procurador General Interino,* y *Candita R. Orlandi, Procuradora General Auxiliar,* abogados de los recurrentes; *Ernesto Maldonado Pérez,* abogado de los recurridos.

PER CURIAM: Una niñita de 6 1/2 años de nombre Sonia fue atendida por primera vez en el Centro de Salud de Vega Alta el 9 de julio de 1971. La madre de la niña le informó al médico que la atendió, Dr. De la Cruz, empleado del Departamento de Salud, que ésta se quejaba de dolor de cabeza, fiebre, diarrea y dolor de estómago.

Llevado a cabo el examen médico de rigor, el Dr. De la Cruz anotó en el récord de emergencia:

"Viene porque según la madre, a la niña le comenzó fiebre que apareció repentinamente, acompañada de malestar general y luego diarreas.

Ex. Físico: Mucosa Bucal ligeramente seca. Rino-faringe y amígdalas ligeramente congestionadas.

Temperatura 39°C

Pulso 130 x mn Respiración 28 x mn.

Corazón: Ruidos normales. Frecuencia Cardíaca 130 x mn.

Pulmones: Claros. Abdomen: Flácido depresible.

Diagnóstico Provisional-Influenza, Enteritis.

Tratamiento:

    1) Dieta Líquida (Jugo de Manzanas) x horas.

    2) Antipirético (1 cudta. c/4 horas)

    3) Antidiarreico."

Luego de recetarle a la niña la envió a su casa. Al día siguiente 10 de julio de 1971 la niñita fue llevada de nuevo al Centro de Salud y atendida por el mismo médico. El récord médico refleja lo siguiente:

"Paciente es traída a emergencia nuevamente porque la fiebre continúa se queja de ligero dolor epigástrico y tiene vómitos, las diarreas que ayer presentaba ha desaparecido.

Examen Físico: Mucosa bucal, seca. Rinofaringe y amígdalas normales.

Corazón: Frecuencia cardíaca 135 x mn. Ruidos normales.

Pulmones: Claros a la auscultación.

Abdomen: Sin tumoraciones palpables, flácido depresible ligeramente doloroso en región epigástrica.

Piel seca. (Deshidratación moderada.)

Diagnóstico Provisional: Influenza.

Rule out Gastroenteritis.

Tratamiento: Pasar a pediatría para observación y tratamiento por 24 horas D/N al 5% en N/S 500 CC 1 a XV gotas x minuto. Bentyl ½ CC 1. m.

Baños de Alcohol con agua a partes iguales.

Bolsa de hielo en la cabeza.

Disposición del caso: Rechequear temperatura cada hora. Reportar al médico de guardia para que disponga lo que crea conveniente.

Dieta: Nada por boca mientras vomite.

Al ser sometida a tratamiento para bajarle la fiebre Sonia respondió al mismo temporeramente y a las 4:30 de ese día 10 de julio fue enviada nuevamente para su casa por el Dr. Matos quien recomendó 'reposo en cama y a la menor alza de temperatura o mayor dolor en epigástrico [*sic*] favor de volverla a traer al Centro de Salud inmediatamente'." Determinación de Hecho Núm. 4.

Fue traída nuevamente al Centro a eso de las nueve de la noche. Convulsaba y mostraba los siguientes síntomas:

"Paciente fue traída de emergencia presentando palpitaciones y dolor agudo de epigástrico [*sic*]. Se encuentra intranquila y depresión fosas claviculares. Apt. en estado dispneíco [*sic*] y convulsionante.

Auscultación HR 340/min/reg.

Pulso 92/min/reg. en ambos radiales.

Lungs rales fijos en base. Temperatura 39° 5C. oral."

Se ordenó su traslado al Hospital de Distrito de Arecibo. Falleció en el camino. La autopsia reveló que murió de un fallo cardíaco respiratorio debido a una bronconeumonía aguda.

En *Vda. de López* v. *E.L.A.*, 104 D.P.R. 178 (1975), expresamos que: "[e]s norma reiterada por este Tribunal en casos de responsabilidad profesional médica, la presunción de

que el médico ha observado un grado razonable de cuidado y atención en la administración de tratamiento médico y que los exámenes practicados al paciente han sido adecuados. Corresponde al reclamante controvertir tal presunción con prueba que demuestre algo más que una mera posibilidad de que el daño se debió al incumplimiento por parte del médico de su obligación profesional. Si de la evidencia surgen varias causas probables del daño, no puede imponérsele responsabilidad al médico, a menos que del examen de la totalidad de la prueba surja que su actuación negligente es la que mayores probabilidades tiene de haber causado el daño."

Del récord clínico anteriormente transcrito surge que la niña fue traída por primera vez al Centro de Salud el día 9 de julio de 1971. En esta ocasión padecía de fiebre alta, diarreas y ligero dolor epigástrico. La niña fue examinada por el médico codemandado—Dr. De la Cruz—y el examen físico—según consta del expediente médico que forma parte de los autos de este caso—describió el siguiente cuadro clínico:

"Mucosa bucal, ligeramente seca; Rinofaringe y amígdalas ligeramente congestionadas; Temperatura 39°C; Pulso 130 por minuto; Respiración, 28 por minuto; Corazón: ruidos normales, Frecuencia cardíaca, 130 por minuto; pulmones, claros; Abdomen flácido y depresible."

A base de este cuadro de síntomas y el historial médico de la paciente, recopilado a base de la información que sobre el estado de la niña suministrara la propia madre, el Dr. De la Cruz hizo un diagnóstico provisional de "Influenza-Enteritis." Recomendó el siguiente tratamiento: "Dieta líquida (jugos de manzana) por 24 horas; antipirético (una cucharadita cada cuatro horas) y antidiarreíco." Se envió a la niña a su hogar y se instruyó a la madre para que continuara en el hogar esta terapia recomendada. Temprano en la mañana siguiente,—10 de julio—la niña fue traída nuevamente al Centro de Salud. Las diarreas habían cesado y esta vez la madre informó al Dr. De la Cruz que la niña había estado

vomitando toda la noche. El Dr. De la Cruz examinó nueva-
mente a la paciente y del expediente médico surge que la niña
tenía entonces 40°C de temperatura y aún se quejaba de dolor
epigástrico.

El expediente médico según hemos visto registra la condi-
ción de la paciente en esta segunda visita al Centro de Salud:

"Examen Físico: Temperatura 40°C; p. 135 por minuto;
Mucosa bucal, seca; Rinofaringe y amígdalas normales; Pul-
mones: claros a la auscultación; Abdomen—sin tumoraciones
palpables, flácido, depresible ligeramente doloroso en región epi-
gástrica; Piel seca (deshidratación moderada)."

Ante este cuadro clínico, el Dr. De la Cruz revisó el diag-
nóstico provisional que hiciera el día anterior y anotó en la
hoja el siguiente diagnóstico: "Influenza—rule out gastroen-
teritis." Se desprende del expediente médico que el Dr. De la
Cruz ordenó la admisión de la niña a la sala de pediatría del
Centro de Salud con el propósito de mantenerla bajo obser-
vación y tratamiento por las próximas 24 horas. Recomendó
la siguiente terapia: solución intravenosa (suero) para com-
batir la deshidratación, antiespasmódico para el dolor epi-
gástrico y baños de alcohol y bolsas de hielo para combatir la
fiebre. Proscribió la alimentación oral de la paciente mien-
tras continuasen los vómitos y ordenó que se tomara la tem-
peratura de la niña al cabo de cada hora. La hoja del expe-
diente médico contiene además las siguiente indicación: "Re-
portar al médico de guardia para que disponga lo que crea
conveniente." (1)

Los demandantes-recurridos alegaron—y el tribunal sen-
tenciador así lo determinó—que ante semejante cuadro clínico
observado por el médico codemandado en el transcurso de
unas pocas horas, el Dr. De la Cruz debió ordenar pruebas de

---

(1) El Dr. De la Cruz estaba por concluir su turno de guardia en la
mañana en que examinó por segunda vez a la paciente. Otro médico—el
Dr. Matos—habría de sustituir al Dr. De la Cruz como médico de turno
aquella mañana y habría de dar de alta a la paciente cuando la fiebre hubo
cesado.

laboratorio con miras a realizar un diagnóstico diferencial o eliminatorio y que su omisión a estos efectos constituye base para fijar responsabilidad al médico y a su patrono por la muerte de esta niña. Es equivocada esta conclusión. La prueba demuestra que en ocasión de ambas visitas de la paciente al médico, éste tuvo ante sí un cuadro de síntomas que—a base del historial de la paciente—razonablemente justificaba un primer diagnóstico de una condición de origen viral como pueden serlo la influenza y la "enteritis". Y la prueba estableció que el tratamiento ordenado por el médico a tenor con este diagnóstico llena las exigencias de la profesión médica.

■ Del testimonio pericial se desprende que no estamos ante el caso donde los síntomas de la infortunada paciente presentaran la probabilidad de un diagnóstico original de pulmonía o bronconeumonía. La prueba pericial estableció que la sintomatología que usualmente conduce a un diagnóstico de pulmonía o bronconeumonía ofrece un cuadro clínico que incluye principalmente: tos, dificultad respiratoria, dolor toráxico y rales pulmonares; entendiéndose por rales aquellos ruidos que produce el movimiento del aire a través de los bronquios-ruidos normalmente susceptibles de ser auscultados mediante el uso del estetoscopio. Tampoco perdemos de vista que el testimonio pericial estableció que en ciertos casos, al parecer bastantes frecuentes, es posible la existencia de un padecimiento pulmonar o bronquial grave sin que los rales o ruidos pulmonares puedan ser auscultados por el estetoscopio.[2] Estamos, por tanto, ante un caso donde ni los síntomas ni el historial del paciente apuntaban originalmente hacia un diagnóstico de pulmonía o bronconeumonía. Si tenemos presente que las intervenciones del médico codemandado con la

---

[2] Según explicara el perito, esto obedece a la presencia de depósitos de secreciones profusas que hacen indetectable los rales por cuanto el ruido es producto del movimiento de aire a su paso por los pasajes bronquiales y las secreciones reducen este movimiento, ocupando el espacio que—en ausencia de padecimiento pulmonar—normalmente ocupa el aire.

paciente transcurren en un período de tiempo que no alcanza las 24 horas y que la condición de la paciente en la segunda visita al médico codemandado tampoco ofrecía el cuadro de síntomas que usualmente conduce a un diagnóstico de pulmonía o bronconeumonía, tenemos que concluir que la atención brindada por el médico a la paciente durante esas pocas horas en que se mantuvo vigente el diagnóstico razonablemente justificado a base del cuadro clínico presente, exhibe aquel grado de cuidado razonable que llena las exigencias de la profesión médica. El médico codemandado realizó un esfuerzo honesto y concienzudo—durante el período de tiempo de poco menos de 24 horas en que se mantuvo operante el diagnóstico original—para enterarse de los síntomas y la condición de la paciente. Su orden, a los efectos de hospitalizar a la niña para mantenerla bajo observación durante las que, desgraciadamente, habrían de constituir sus últimas horas de vida, pone de manifiesto un juicio de prudencia y razonabilidad en su intento por llegar a un diagnóstico correcto en el cumplimiento de su deber de esforzarse por conocer la verdadera condición de la paciente. En vista de ello opinamos que el médico observó una conducta que demostró el ejercicio de un criterio de razonabilidad en relación con el grado de cuidado y atención médica empleados. Si a esto añadimos el hecho que el cuadro clínico observado por el médico durante un período de tiempo que no alcanzó 24 horas no constituía el cuadro de síntomas que de ordinario conduce a un diagnóstico de pulmonía o bronconeumonía, forzoso es concluir que no se justifica la imposición de responsabilidad por impericia profesional a base de que el médico omitiera ordenar una serie de pruebas de laboratorio para descartar un diagnóstico que era compatible con el cuadro de síntomas que presentaba la paciente en ocasión de ambas visitas al Dr. De la Cruz.

██ El caso de autos ejemplifica la circunstancia de un diagnóstico equivocado dentro de un contexto en que ha ope-

rado aquel criterio de razonabilidad que libera de responsabilidad por impericia profesional a un médico que en el cumplimiento de su deber, hace un esfuerzo honesto y concienzudo para enterarse de los síntomas y condición del paciente. *Morales* v. *Hosp. Matilde Brenes*, 102 D.P.R. 188, 194 (1974).

En presencia de testimonio pericial a los efectos de que el tratamiento ordenado por el médico a tenor con los síntomas que presentaba la paciente es aceptable dentro de la práctica de excelencia de la medicina, no encontramos justificada la imposición al médico de responsabilidad por impericia profesional a base de que no se ordenaran exámenes de laboratorio durante el transcurso de las breves horas en que quedan comprendidas ambas visitas de la paciente al médico codemandado. Los síntomas presentes en la segunda visita de la paciente, a la mañana siguiente de haberse hecho el diagnóstico preliminar, no hacían sospechar una condición pulmonar que habría de desembocar, pocas horas más tarde, en el deceso de la infortunada menor.

*Se revocará la sentencia recurrida.*

El Juez Presidente Señor Trías Monge y los Jueces Asociados Señores Martín e Irizarry Yunqué concurren en el resultado.