LUCÍA NÚÑEZ MARTÍNEZ ET AL., demandantes y recurrentes, *v.* HÉCTOR MARTÍNEZ ROSADO ET AL., demandados y recurridos.

*Número:* RE-91-424          *Resuelto:* 27 de septiembre de 1991

*Osvaldo Pérez Marrero*, abogado de los recurrentes; *Harold D. Vicente*, de *Vicente & Cuevas*, abogado de los recurridos.

Sala Especial de Verano integrada por su presidente el Juez Asociado señor Negrón García y los Jue es Asociados señores Hernández Denton y Alonso Alonso.

## RESOLUCIÓN

A la solicitud de revisión, *no ha lugar*.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió un voto disidente.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

## — O —

Voto disidente del Juez Asociado Señor Negrón García.

### I

Discrepamos de la negativa de la Sala[1] a expedir y revocar la sentencia del Tribunal Superior, Sala de Guayama (Hon. Carmen J. Ortiz Ramos, Juez), que declaró sin lugar la demanda de mala práctica médica. Prima facie, la parte actora, Sra. Lucía Núñez Martínez, probó su caso: estableció que las obstrucciones a sus riñones se debieron a que negligentemente le suturaron dos (2) áreas del uréter durante un procedimiento de histerectomía. Este hecho no contradicho activó la regla de *res ipsa loquitur*.

Es incomprensible, pues, el fundamento del ilustrado foro de instancia de que no se produjo evidencia de un acto u omisión en el ámbito de la responsabilidad profesional

---

[1] Integrada al presente por los Jueces Asociados Señores Hernández Denton, Alonso Alonso y el que suscribe.

médica. Menos comprensible es concluir que esas suturas fueran un riesgo o complicación inherente de la operación de histerectomía incapaz de activar la norma de *res ipsa loquitur*. Si toda cirugía conlleva múltiples riesgos, bajo ese razonamiento, ¿en qué situaciones podrá invocarse?

## II

El enfoque del tribunal sentenciador es contrario a toda la literatura médica. Así lo documentamos en *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 653–654 (1988):

Toda vez que no existe un método único comprobado para la prevención de los daños ureterales, se hace indispensable que el médico se relacione con las estructuras anatómicas localizadas en el área a ser intervenida, así como de cualquier alteración anatómica que presente el paciente a ser sometido a operación. [M.J.] Campbell y [J.H.] Harrison, [*Urology*, Philadelphia, Ed. W.B. Saunders, 1970, Vol. I], pág. 827.

La buena práctica de la medicina le exige al médico que vaya a operar a una paciente con una condición similar a la de autos que identifique y que visualice el uréter. Este proceso de visualización y de palpación debe ser continuo durante toda la intervención quirúrgica. Campbell y Harrison, *op. cit.*, pág. 828. Cuando el campo operatorio presenta masas inflamadas o tumores, el médico debe también identificar las estructuras anatómicas, los márgenes de la vejiga y los ligamentos presentes en el área. La identificación del uréter se completa entonces con la palpación e inspección del mismo. [L.A.] Orkin, [*Trauma to the Ureter: Pathegenesis and Management*, Philadelphia, Ed. F.A. Davis, 1964], pág. 155.

Una vez que el médico se ha cerciorado de que no ha ocurrido una lesión en el uréter, como paso previo a cerrar el abdomen, debe inspeccionar y visualizar el uréter. También debe cerciorarse de que no exista extravasación de orina. [4B *Attorney's Textbook on Medicine* Cap. 284, Sec. 284.35], pág. 248-16.

Se ha sostenido en algunos tratados médicos que el reconocimiento durante la realización de una operación de que se ha causado una lesión al uréter, depende en primera instancia de la *sospecha que el cirujano* tenga sobre la posibilidad de que haya ocurrido una lesión. Campbell y Harrison, *op. cit.*, pág. 831; [6] *Lawyers' Medical Cyclopedia* [Sec. 44.28(D), pág. 529

(1977)]. Uno de los aspectos más importantes a considerar en la determinación de la lesión al uréter y la imputación de responsabilidad a un facultativo lo es el reconocimiento temprano de la lesión. Como muy correctamente señalara Charles Higgins, M.D., "[e]l pecado venial es el daño al uréter, pero el pecado mortal es la falta en reconocerlo". ... [M.C.] Daley, [*Ureteral Injuries*, 1972 Med. Trial Tech. Q. 251, 256 (1972)]. (Énfasis en el original.)

## III

Evidentemente la jurisprudencia reciente ha causado una honda erosión en esta sensible área de la justicia. Como dijimos en nuestro disenso en *Pagán Rivera v. Mun. de Vega Alta*, 127 D.P.R. 538, 553 (1990), "[n]os preocupa seriamente que este Foro apelativo siga adjudicando casos de esta naturaleza sobre la base de la premisa de que existe una 'presunción' de que un médico ejerce un grado razonable de cuidado en el tratamiento de sus pacientes. *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639 (1988); *Rosado Rosado v. E.L.A.*, 108 D.P.R. 789 (1979). Al hacerlo, continúa arrastrando un grave error evidenciario que acarrea repetidas injusticias. *No existe tal presunción*. La norma jurídica correcta ha sido malinterpretada. De la obligación que tiene todo reclamante de probar su caso mediante 'preponderancia de prueba' —*Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517, 521–522 (1980); *Cruz v. Centro Médico de P.R.*, 113 D.P.R. 719, 744 (1983)— incluso activando la doctrina de *res ipsa loquitur*, se ha arribado a semejante presunción mediante un salto cuya lógica no alcanzamos a entender". (Énfasis en el original.)

Si se continúa con esta tendencia judicial, debe examinarse la posibilidad de eliminar de los textos de las escuelas de derecho el capítulo referente a la negligencia (*malpractice*) médica.