# 98 DTA 182

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE BAYAMON**

WANDA I. MATOS Y RUBEN CASILLAS POR SI Y COMO PADRES
DEL MENOR RUBEN CASILLAS MATOS
Demandantes-Apelantes

v.

HOSPITAL SAN PABLO, ET AL
Demandado-Apelado

Núm. KLAN-97-00577

San Juan, Puerto Rico, a 24 de abril de 1998

Panel integrado por su Presidenta, Juez Rivera de Martínez
y los Jueces Rivera Pérez y Soler Aquino

Soler Aquino, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Mediante el presente recurso de apelación se solicita a este Tribunal la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 30 de abril de 1997, y notificada y archivada en autos copia de la notificación el 12 de mayo de 1997. En la referida

sentencia el Tribunal de Primera Instancia declaró no ha lugar la demanda presentada por los demandantes en todas sus partes. De dicha determinación acude ante nos la parte demandante mediante el presente recurso.

La demanda por daños y perjuicios e impericia médica fue presentada en el mes de junio de 1996. En la misma, Wanda I. Matos por sí y en representación de su hijo menor de edad, Rubén Casillas Matos, (en adelante demandantes-apelantes), alegaron que los demandados el Hospital San Pablo, el Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria (SIMED) y los doctores Pares Cid Mansur y Carlos de Orduña fueron negligentes en el diagnóstico y tratamiento médico que le fue brindado al menor co-demandante-apelante, la noche del 31 de diciembre de 1992 y la madrugada del 1 de enero de 1993.

Luego de comenzado el descubrimiento de prueba, la parte demandante-apelante presentó una moción desistiendo con perjuicio en cuanto al co-demandado, Hospital San Pablo. Más adelante, el Tribunal de Primera Instancia desestimó la demanda en cuanto a SIMED como posible asegurador del Hospital San Pablo. De esta forma quedaron como demandados en el pleito incoado los doctores Fares Cid Mansur y Carlos de Orduña, (en adelantes demandados-apelados).

Luego de varios incidentes procesales y ya culminado el descubrimiento de prueba, se celebró la vista en su fondo los días 11 y 12 de marzo de 1997. La parte demandante ofreció como prueba de negligencia el testimonio del Dr. Benito Colón Soto, especialista en Medicina de Emergencia. Además, testificaron los co-demandantes-apelantes, la señora Matos y su hijo Rubén Casillas. Como prueba presentada por todas las partes, el tribunal recibió en evidencia el expediente médico del menor co-demandante-apelante proveniente de la Sala de Emergencia del Hospital San Pablo, así como el expediente médico de la subsiguiente hospitalización de éste en el Hospital Hermanos Meléndez.

Al finalizar el turno de prueba de la parte demandante y haber sometido su caso, la parte demandada-apelada sometió ante el Tribunal de Primera Instancia una moción de desestimación al amparo de la Regla 39.2 (c) de las de Procedimiento Civil. Los demandados-apelados argumentaron que la parte demandante no había probado las alegaciones de negligencia, ni la relación causal entre las actuaciones de los demandados-apelados y los daños causados a la parte demandante-apelante. También adujeron que no se había probado la existencia de daños reales.

Luego de escuchados los argumentos a favor y en contra de la moción de desestimación, el Tribunal de Primera Instancia declaró ha lugar la misma y ordenó el archivo y sobreseimiento de la causa de acción en contra de la parte demandada-apelada.

Inconformes con dicho dictamen, la parte demandante-apelante acude ante nos señalando como error cometido por el Tribunal de Primera Instancia el siguiente:

*"Incidió el Tribunal de Instancia al declarar con lugar la moción bajo la Regla 39.2(c) de Procedimiento Civil a pesar de que la parte demandante presentó prueba estableciendo todos los elementos de una acción de daños y perjuicios bajo el Artículo 1802 del Código Civil."*

**I**

Para una mejor comprensión de la controversia ante nos expondremos brevemente el trasfondo fáctico del caso. Veamos.

La noche del 31 de diciembre de 1992, el menor co-demandante-apelante llegó a la Sala de Emergencias del Hospital San Pablo presentando un cuadro clínico de vómitos, fiebre, diarrea y dolor abdominal generalizado. Estando allí se le ordenaron al paciente los siguientes laboratorios: hemograma y diferencial, urinálisis, SMA 20 y amilasa serica. Además se le administró Tigan 20mg. Intramuscular, Bentyl 10mg. y glucosa al 5% en salina. También se le realizó una placa abdominal KUB, cuyo resultado fue negativo. El diagnóstico preliminar fue de gastroenteritis. Luego de estar durante nueve (9) horas en observación, el paciente fue dado de alta a las 7:20 a.m. del día 1 de enero de 1993. Se le administró Nubain 5mg intramuscular y se instruyó consultar con el pediatra del menor

y administrarle los medicamentos Bentyl 20mg. cada ocho (8) horas y Zantax 150mg cada doce (12) horas. Ese mismo día, aproximadamente a las 6:00 p.m., el co-demandante-apelante fue llevado a la Sala de Emergencias del Hospital Hermanos Meléndez con síntomas de dolor a la palpación en el cuadrante Superior derecho del abdomen. Se le ordenaron al paciente los siguientes medicamentos y análisis: Travet, CBC, Urinálisis y SMA 6. Cabe señalar, que no fue hasta el día 2 de enero de 1993, que el doctor de cabecera del co-demandante-apelante, el doctor Narváez, acudió a examinar la condición de éste. Fue en ese momento, que el doctor Narváez solicitó una consulta con un cirujano y un gastroenterólogo. Además, ordenó la realización de otros laboratorios, placas abdominales, KUB y un sonograma abdominal, el cual tuvo un resultado negativo. Luego de ser atendido por el cirujano, Dr. Calvesbert, éste diagnosticó apendicitis aguda y recomendó una intervención quirúrgica. Dicha intervención quirúrgica fue realizada al co-demandante-apelante el día 2 de enero de 1993. Este fue dado de alta el 6 de enero de 1993 sin complicaciones.

De estos hechos es que la parte demandante-apelante radicó demanda por daños y perjuicios e impericia médica contra los aquí demandados-apelados.

## II

Nuestro más alto tribunal ha establecido que la responsabilidad civil por actos de mala práctica en la medicina, debido a la impericia o negligencia de un facultativo, surge del Artículo 1802 de nuestro Código Civil. ■ La norma que aplica a estos casos es que, para que nazca la responsabilidad civil médica, el promovente de la acción tiene que establecer la ocurrencia de un acto médico culposo o negligente, la producción de un daño real y la relación causal entre el acto médico y el daño sufrido. ■ De lo contrario, no procedería la indemnización solicitada porque la acción que se insta al amparo de la responsabilidad médica, como cualquier otra que se inicie bajo el Artículo 1802, ■ es una de carácter estrictamente resarcitorio y existe únicamente si el acto negligente del demandado ocasionó un daño real. ■

Para que exista responsabilidad civil médico-hospitalaria, además de negligencia y de un daño indemnizable, debe existir causalidad; es decir, la parte demandante tiene que probar que la conducta del facultativo fue el factor que con mayor probabilidad ocasionó el daño y establecer la relación de causa y efecto entre ambos. ■ En Puerto Rico rige la doctrina de causalidad adecuada. Conforme a ella, no es causa toda condición sin la cual no se hubiese producido el resultado, sino aquella que según la experiencia general ordinariamente lo produce. ■

Para establecer la relación causal necesaria, no es suficiente que un hecho aparente ser condición de un evento, si éste regularmente no trae aparejado ese resultado. ■ Desde el punto de vista conceptual, la cuestión de la causalidad es un problema esencialmente de imputabilidad. Para que exista causalidad, el daño ha de existir en razón de la conducta del demandado; es decir tiene que ser concretamente atribuible a la acción o conducta humana imputada. Por lo que, aun de concurrir varias causas, no puede considerarse aisladamente la mera sucesión de acontecimientos sino que hay que tener en cuenta qué causa es la decisiva, que por sus circunstancias ocasiona el daño y justifica que se le impute el mismo a alguien en particular. ■

En nuestra jurisdicción se espera que el médico ofrezca a su paciente aquella atención médica, cuidados, destrezas y protección que a la luz de los modernos medios de comunicación y enseñanza y conforme al estado de conocimiento de las ciencias médicas, satisface las exigencias generalmente reconocidas por la propia profesión médica. ■

En casos donde se alega impericia médica, la parte demandante tiene la obligación de establecer, mediante preponderancia de la prueba, que el tratamiento médico ofrecido por el demandado o la ausencia de proveer el tratamiento indicado y correcto, fue el factor que con mayor probabilidad ocasionó el daño sufrido por el paciente. ■ La parte demandante tiene que probar que el tratamiento suministrado por el demandado no fue el adecuado. ■

Dentro del ámbito de las funciones se le reconoce al médico una latitud amplia en su discreción al momento de formular su juicio profesional en cuanto al diagnóstico y tratamiento médico. El Tribunal Supremo reiteradamente ha rechazado imponer responsabilidad cuando el médico ha utilizado su buen juicio profesional y el mismo es cónsono con lo razonablemente aceptado por muchos sectores de la

profesión médica. ■ Un error de juicio honesto y razonable, basado en un desacuerdo latente entre las autoridades médicas sobre el diagnóstico o tratamiento recomendable, no constituye un acto negligente que sujete a responsabilidad torticera. ■

Al evaluar la actuación de un médico, no podemos olvidar que a éste lo acompaña una presunción al efecto de que ha ejercido un grado razonable de cuidado y el tratamiento fue uno adecuado. El hecho de que un paciente haya sufrido un daño o que el tratamiento no haya tenido éxito, no crea ninguna presunción de negligencia por parte del médico. La parte demandante no podrá descansar para rebatir esta presunción, en una mera posibilidad de que el daño se debió al incumplimiento de parte del médico de su obligación profesional. Ello requiere que la relación de causalidad no se establezca a base de una mera especulación o conjetura. ■

Corresponde al demandante probar, mediante preponderancia de la prueba, que el tratamiento ofrecido por el demandado fue el factor que con mayor probabilidad ocasionó el daño y establecer, además, el vínculo causal requerido por el Artículo 1802 del Código Civil. ■ Para establecer *prima facie* un caso de daños y perjuicios por negligencia de un médico, el demandante tiene que presentar prueba sobre: (1) las normas mínimas de conocimientos y cuidado médico aplicables a los generalistas o a los especialistas y (2) la relación causal entre la actuación u omisión del facultativo y la lesión sufrida por el paciente. ■

El demandante debe establecer, mediante prueba pericial, cuáles son los requisitos de cuidado y conocimiento científico requeridos por la profesión en el tratamiento de determinado tipo de pacientes. Esa prueba deberá demostrar cuáles son las exigencias de toda la profesión a la luz de los conocimientos científicos disponibles, mediante los medios de comunicación y programas de educación continuada, así como las normas de consentimiento informado aplicables al caso y la razón por la cual el médico no cumplió con las mismas. ■

En el caso de autos, los aquí demandantes-apelantes plantearon ante esta Curia que el Tribunal de Primera Instancia erró al desestimar la demanda basándose en lo dispuesto en el inciso (c) de la Regla 39.2 de Procedimiento Civil. ■ La referida Regla dispone en lo pertinente lo siguiente:

*"Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos."*

A base de la prueba desfilada por la parte demandante-apelante, lo dispuesto en la Regla 39.2(c) de Procedimiento Civil, así como la jurisprudencia interpretativa de dicha regla, concluimos que actuó correctamente el Tribunal de Primera Instancia al desestimar la demanda en el caso presentado ante nos.

Surge inequívocamente del expediente, que el caso de autos ejemplifica la circunstancia de un diagnóstico equivocado dentro de un contexto en que ha operado aquel criterio de razonabilidad que libera de responsabilidad por impericia profesional a un médico que en el cumplimiento de su deber, hace un esfuerzo honesto y concienzudo para enterarse de los síntomas y condición del paciente. ■

Como ya mencionamos, como parte de la prueba desfilada por la parte demandante-apelante, se ofreció como prueba de negligencia el testimonio del perito doctor Benito Colón Soto. Según surge de la transcripción de dicho testimonio, el doctor Colón Soto admitió que tanto en el Hospital San Pablo como en el Hospital Hermanos Meléndez se le tomaron al paciente básicamente los mismos laboratorios y placas y en ambas instituciones hospitalarias se recetaron medicamentos similares partiendo de un diagnóstico inicial compatible con gastroenteritis. Además, reconoció que la cirugía que eventualmente fue realizada en la persona del co-demandante-apelante no era una de emergencia,

sino que se trataba de un proceso quirúrgico inevitable. Por otro lado, también surge de las declaraciones del perito que, al momento de ofrecer su opinión pericial con respecto al presente caso, éste no tuvo a su disposición los récords médicos durante el tiempo que el paciente fue atendido en el Hospital Hermanos Meléndez.

A la luz de la prueba ofrecida y del testimonio del perito, concluimos que el diagnóstico inicial que se le hizo al paciente en ambas instituciones hospitalarias fue uno similar. Analizando detenidamente los documentos que obran en autos encontramos que las notas de progreso del propio cirujano que operó al co-demandante exponen que el diagnóstico médico de éste era uno difícil. ■

Ciertamente de este conjunto de hechos, forzoso es concluir que procede la desestimación de la demanda, según correctamente lo decretara el Tribunal de Primera Instancia. La prueba presentada por la parte demandante-apelante ante el Tribunal de Primera Instancia no fue suficiente para poder imponerle responsabilidad a los médicos demandados-apelados.

Estamos de acuerdo con el Tribunal de Primera Instancia en que no existe evidencia suficiente que pueda probar que los médicos demandados-apelados fueron negligentes en el cumplimiento de su deber.

Recordemos que en esa etapa de los procedimientos, dicho Tribunal estaba autorizado a aquilatar la prueba presentada y formular su apreciación de los hechos.

La jurisprudencia ha determinado que cuando se trata de evaluar las determinaciones sobre impericia médica que están fundamentadas en la prueba pericial y documental ofrecida, los tribunales apelativos están en igual posición para evaluarlas y hacer sus propias conclusiones. ■

Es doctrina reiterada que las determinaciones del tribunal de instancia deben ser objeto de gran deferencia, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. ■ A tenor de lo anterior, las determinaciones del juzgador de instancia tienen que gozar de deferencia por este Tribunal, por la oportunidad Superior que tuvo dicho foro para aquilatar la prueba testifical. ■ Un tribunal apelativo no debe intervenir innecesariamente, porque puede estar usurpando las facultades adjudicativas del tribunal apelado. ■

### III

Por los fundamentos expuestos y no habiéndose cometido el error señalado, confirmamos la sentencia apelada.

Así lo acordó y mandó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

**ESCOLIOS 98 DTA 182**

**1.** 31 L.P.R.A. 5141; *Ortega v. Pou,* ___ D.P.R. ___ (1994), **94 J.T.S. 51,** opinión de 7 de abril de 1994.

**2.** *Soto Cabral v. E.L.A.* ___ D.P.R. ___ (1995), **95 J.T.S. 49,** opinión de 21 de abril de 1995.

**3.** *Ibid.*

**4.** *Soto Cabral v. E.L.A., supra; Rodríguez Cancel v. A.E.B.,* 116 D.P.R. 443 (1985).

**5.** *Ramos Robles y otros v. García Vicario y otros,* ___ D.P.R. ___ (1993), **93 J.T.S. 167**, opinión de 20 de diciembre de 1993.

**6.** *Soto Cabral v. E.L.A., supra; Negrón García v. Noriega Ortiz,* 117 D.P.R. 570 (1984).

**7.** *Ortiz Torres v. K & A Developers, Inc.,* (1994), **94 J.T.S. 78,** opinión de 25 de mayo de 1994.

8. *Cárdenas Maxán v. Rodríguez Rodríguez*, ___ D.P.R. ___ (1990), **90 J.T.S. 36** opinión de 9 de marzo de 1990.

9. *Santiago Otero v. Méndez*, ___ D.P.R. ___ (1994), **94 J.T.S. 38**, opinión de 25 de marzo de 1994; *Ramos Robles v. García Vicario, supra.*

10. *Santiago Otero v. Méndez, supra; Rodríguez Crespo v. Hernández*, 121 D.P.R. 639 (1988).

11. *Rosado Rosado v. E.L.A.*,108 D.P.R. 789 (1979).

12. *Ramos Robles v. García Vicario, supra.; Reyes v. Phoenix Assurance Co.*, 100 D.P.R. 871 (1988).

13. *Rodríguez Crespo v. Hernández, supra.*

14. *Ramos Robles v. García Vicario, supra; Rodríguez Crespo v. Hernández, supra.*

15. *Ibid.*

16. *Rodríguez Crespo v. Hernández, supra; Medina Santiago v. Vélez*, 120 D.P.R. 380 (1988).

17. *Rodríguez Crespo v. Hernández, supra.*

18. 32 L.P.R.A. Ap. III, Regla 39.2.

19. *Rosado Rosado v. E.L.A., supra; Morales v. Hospital Matilde Brenes*, 102 D.P.R. 188 (1974).

20. "*Apéndice retrocecal no purulenta, ni perforada, pero gangrenosa. Quizás la posición pudo influenciar en el diagnóstico e identificación dificultosa de este cuadro en el Hospital San Pablo* ". (Traducción. Progress Record, Dr. Calvert, Apéndice 10, oposición a escrito de apelación).

21. *Ramos Robles v. García Vicario, supra.*

22. *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987).

23. *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188 (1986).

24. *Morán Simó v. García Cristóbal*, 106 D.P.R. 155 (1977).