*875 TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos, mediante recurso de apelación, Carmen Himilce Torres Colón y Ramos Vega Irizarry, por sí y en representación de su hija menor Raysa Vega Torres, en adelante, los apelantes, solicitando la revisión de una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo desestimó la Demanda incoada por los apelantes.
Por los fundamentos que expresamos a continuación, se revoca la Sentencia apelada.
I
Conforme surge del recurso ante nuestra consideración, el 16 de marzo de 1998, los apelantes instaron una Demanda en daños y perjuicios contra el Hospital Santo Asilo de Damas, en adelante, Hospital Santo Asilo, la Dra. Josephine Fratallone y los demandados de nombre desconocido indicados en el epígrafe del caso. En la Demanda se incluyeron las siguientes alegaciones:

6. Que durante el pasado mes de marzo de 1997, la niña [Rayza Torres Vega] fue llevada al hospital por encontrarse delicada de salud, por lo cual fue llevada al Hospital Santo Asilo de Damas, en donde la dejan hospitalizada bajo ciertos tratamientos médicos.

*876 7. Que entre los tratamientos, se llevó a cabo la insertación de una subclavia o algo parecido para ofrecer tratamientos, la cual permaneció en el cuerpecito de la niña por uno doce (12) días.

8. Pasado el tiempo, la niña no necesitaba más la subclavia, por lo cual la Dra. Fratallone y/o el DR. JOHN DOE proceden a despegar la subclavia del cuerpo.

9. Que al momento de desconectar la subclavia del cuerpo de la niña, la misma se partió y se quedó el catéter o pieza de la subclavia adentro del cuerpo de la niña.

10. Que, inmediatamente, los doctores se dieron cuenta de esta situación sin decirle nada a los padres de la niña, y en la Sala de Intensivo la practicaron una cirugía con la desgracia de que, al tratar de sacar el catéter, éste se le cayó y se fue hacia adentro y cerca del corazón, de dónde no han podido recuperarlo.

11. Que, ahora, la niña permanece con una pieza u objeto extraño adentro de su corazón y, debido a las condiciones de salud, no podrán sacárselo ”.

Véase, Apéndice de la Apelación a las págs. 53-54.
Los apelantes también alegaron el sufrimiento de daños y perjuicios y que éstos fueron consecuencia de la impericia médica de los doctores que atendieron a la menor y la mala calidad o defectos del equipo o utensilios médicos utilizados. Su reclamación de compensación por daños ascendía a un monto total de $1,600,000.00.
El 18 de junio de 1999, los apelantes solicitaron la enmienda de la Demanda para traer como demandado al fabricante del catéter, Cook Incorporated. Los co-demandados Dra. Fratallone, Cook Incorporated y el Hospital Santo Asilo presentaron alegación responsiva negando los hechos esenciales de la misma. El Hospital Santo Asilo, a su vez, interpuso una Demanda de co-parte contra Cook Incorporated. Esta última contestó las Demandas incoadas negando hechos esenciales, así como responsabilidad por la rotura del catéter.
Concluido el descubrimiento de prueba, Cook Incorporated presentó una solicitud de sentencia sumaria al tribunal de instancia. El Tribunal de Primera Instancia la declaró Ha Lugar por insuficiencia de prueba el 25 de enero de 2005, notificada el 11 de febrero de 2005.
Iniciado el juicio, y posterior a la presentación de la prueba por los apelantes, los apelados solicitaron la desestimación de la demanda. Ésta se ordenó sólo frente a la Dra. Fratallone a base de los hechos probados hasta ese momento y las disposiciones legales aplicables. En cuanto al Hospital Santo Asilo, se ordenó que continuaran los procedimientos. Una vez sometida la prueba de las partes y quedando el caso para su adjudicación, el 12 de junio de 2006, notificada el 27 de junio de 2006, el Tribunal de Primera Instancia dictó Sentencia desestimando la Demanda en contra del Hospital Santo Asilo y la Dra. Josephine Fratallone. Evaluada la prueba testifical, documental y pericial, el tribunal a quo allegó a las siguientes determinaciones de hechos:

“1. A la fecha de los hechos que dieron lugar a la interposición de esta demanda, Doña Carmen Himilce Colón y Don Ramón Vega Irizarry estaban casados entre sí, habiendo contraído nupcias el 8 de marzo de 1995.

2. Rayza Vega Torres (“Rayza”) es hija de Doña Carmen Himilce Colón y de Don Ramón Vega Irizarry.

3. El 4 de marzo de 1997, los padres de Rayza la llevaron al consultorio del Dr. Pérez, pediatra en el pueblo de Guayanilla.

4. Luego de examinarla, el Dr. Pérez le indicó a los padres de Rayza que llevaran a la menor al Hospital Santo Asilo de Damas (“Hospital Damas”).

*877
5. Ese mismo día, Rayza fue hospitalizada en el Hospital de Damas, con un diagnóstico de pulmonía bilateral.

6. A la fecha del 4 de marzo de 1997, Rayza tenía un año y 10 meses de edad y padecía de perlesía cerebral, desorden convulsivo severo, mala nutrición y reflujo gastro-esofágico.

7. Las condiciones de perlesía cerebral, desorden convulsivo severo, mala nutrición y reflujo gastro-esofágico no son consecuencia, ni fueron inducidos o provocados, por los hechos de mala práctica de la medicina que se imputa en la demanda.

8. A las 3:30 de la tarde de ese mismo día, la condición pulmonar de la menor empeoró presentando un cuadro de fallo respiratorio.

9. Para atender el fallo respiratorio, a Rayza se le practicó una entubación endotraqueal y fue conectada a un ventilador mecánico para ayudarla a respirar y mejorar su oxigenación.

10. Como Rayza tenía la hemoglobina baja, estaba severamente deshidratada y padecía de reflujo gastro-esofágico, por lo que se determinó proveerle nutrición y medicamentos por vía endovenosa.

11. El 6 de marzo de 1997, a Rayza se le colocó un catéter central en su vena subclavia izquierda.

12. El catéter le fue colocado en la vena subclavia izquierda debido a que la menor no tenía venas periferales accesibles.

13. La venopunción de la vena subclavia izquierda fue practicada por el cirujano Rafael Quiñones Torres mediante el procedimiento conocido como “Place Central Venous”.

14. Luego de colocado el catéter, se procedió a tomar una radiografía de pecho a la menor, confirmándose que el catéter quedo colocado correctamente.

15. De la radiografía no surge que el catéter se hubiera roto o fraccionado durante la colocación del mismo.

16. El 20 de marzo de 1997, habiendo mejorado la condición médica de Rayza, se le desconecta del respirador mecánico.

17. El 21 de marzo se ordena removerle el catéter central.

18. El procedimiento para remover el catéter fue realizado por la Dra. Josephine Fratallone.

19. La Dra. Fratallone, a la fecha de los hechos que dan lugar a la demanda, no era empleada del Hospital Santo Asilo de Damas.

20. Cuando la Dra. Fratallone removió el catéter, el mimo se quebró quedando alojado en el cuerpo de la menor un fragmento del catéter.

21. Inmediatamente se puso una consulta al cirujano.

22. El 'cirujano exploró la vena subclavia, localizó el fragmento de catéter, pero no lo pudo remover, por lo que procedió a cerrar la incisión.

23. El fragmento de catéter está alojado en el ventrículo derecho del corazón.

*878
24. Rayzafue dada de alta de la unidad de cuidado intensivo el 22 de abril de 1997, y del Hospital Santo Asilo de Damas el 25 del mismo mes y año ”.

Véase, Apéndice de la Apelación, a las págs. 33-36.
En su Sentencia, el tribunal a quo especificó que los apelantes “no pudieron probar que la colocación del catéter en la vena subclavia izquierda, y la posterior remoción del mismo, constituyó mala práctica de la medicina, y que dicha negligencia fue el factor que con mayor probabilidad causó que el catéter se quebrara”. Véase, Apéndice de la Apelación, a la pág. 38.
Inconforme ante tal determinación, los apelantes acuden ante nos. Con el beneficio de la Transcripción de la Prueba y el alegato de los apelados, procedemos a resolver.
II
En su recurso, los apelantes plantean que incidió el Tribunal de Primera Instancia al desestimar la Demanda después de observar el demeanor de los testigos, incluyendo el perito de la parte demandada, y no encontrar causa para la presentación de la Demanda, en contravención a las estipulaciones sometidas, entre las partes; determinar que no se estableciera en forma alguna que el pedazo de catéter alojado en el corazón de la menor Vega Torres no es parte de la negligencia o impericia médica; exigir a la parte demandante que probara la negligencia más allá de la preponderancia de la prueba; determinar que los apelantes no tenían derecho a la concesión de derecho alguno, y consecuentemente desestimar la demanda.
III
Como es sabido, toda acción por daños y perjuicios tiene que cumplir con lo dispuesto en el Art. 1802 del Código Civil. Dicho precepto reza:
“El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización”. 31 L.P.R.A. sec. 5141. Bacó, Administrador del Fondo del Seguro v. ANR Construction Corp., 163 D.P.R. _ (2004), 2004 J.T.S. 162; Valle Izquierdo v. E.L.A., 157 D.P.R. ___ (2002), 2002 J.T.S. 70; Laureano Pérez v. Soto, 141 D.P.R. 77 (1996).
Para que se configure una causa de acción por responsabilidad civil extracontractual al amparo del Art. 1802, supra, es indispensable que el demandante pruebe: 1) la existencia de una acción u omisión productora del acto ilícito extrajudicial; 2) la antijuridicidad de la misma; 3) la culpa o negligencia del agente; 4) la producción de un daño; y 5) la relación causal entre la acción u omisión y el daño. Bacó, Administrador del Fondo del Seguro v. ANR Construction Corp., supra; Municipio de San Juan v. Bosque Real, 158 D.P.R. _ (2003), 2003 J.T.S. 33; Jusino Figueroa v. Walgreens, 155 D.P.R. 560 (2001); Sucns. Vega Marrero v. A.E.E., 149 D.P.R. 159 (1999); Montalvo v. Cruz, 144 D.P.R. 748 (1998); Toro Aponte v. E.L.A., 142 D.P.R. 464 (1997); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990).
Asimismo, el Tribunal Supremo ha definido la culpa o negligencia como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Sucns. Vega Marrero v. A.E.E., supra; Montalvo v. Cruz, supra; Ramos v. Cario, 85 D.P.R. 353 (1962). Este deber de anticipar y prever los daños no se extiende a todo peligro imaginable, sino a aquél que llevaría a una persona prudente a anticiparlo. Sucns. Vega Marrero v. A. E.E., supra; Elba A.B.M. v. U.P.R., supra; Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Pacheco v. A.F.F., 112 D.P.R. 296 (1982). No obstante, no es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia natural y probable del acto u omisión negligente. Tormos Arroyo v. D.I.P., 140 D.P.R. 265 (1996).
*879 Al referimos a la omisión, ésta genera responsabilidad civil por negligencia si tal conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley y si de haberse realizado el acto omitido se hubiera evitado el daño. Tormos Arroyo v. D.I.P., supra; Arroyo López v. E.L.A., 126 D.P.R. 682 (1990); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986). Conforme señaló el Tribunal Supremo en Arroyo López v. E.L.A., supra, “ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño.” Véase, Sucns. Vega Marrero v. A.E.E., supra.
Por su parte, el concepto de daño en nuestro ordenamiento jurídico incluye todo aquel menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica. García Pagán v. Shiley Caribbean, 122 D.P.R. 193 (1988).
Ahora bien, no basta la mera existencia de un daño y la acción u omisión negligente. Es imperativo, además, la existencia de un nexo causal entre el daño y el acto culposo o negligente. Es norma reiterada en nuestra jurisdicción que la doctrina que nos rige respecto al nexo o relación causal es la doctrina de la causalidad adecuada, según la cual “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general”. Valle Izquierdo v. E.L.A., supra; Sucns. Vega Marrero v. A.E.E., supra; Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974). Véase, además, Toro Aponte v. E.L.A., supra; Elba A.B.M. v. U.P.R., supra; Aseg. Lloyd's London v. Cía. Des. Comercial, 126 D.P.R. 251 (1990); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702 (1990).
A su amparo, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos, o si por el contrario, queda fuera de ese posible cálculo. J. Santos Briz, Comentarios al Código Civil y Compilaciones Florales, Madrid, Ed. Rev. De Privado, 1984, T. XXIV, pág. 267. Es decir, para que exista relación causal, la acción u omisión tiene que ser idónea para producir el efecto esperado, tiene que determinarlo normalmente. A fin de establecer esa vinculación de causa y efecto entre esos dos sucesos, tenemos que realizar un análisis retrospectivo de posibilidad. En vista de ello,'no es suficiente que un hecho aparezca como condición de un evento, si regularmente no trae aparejado ese resultado. La causalidad está necesariamente limitada por el ámbito de la obligación, pues es infinita la serie de daños que, en interminable encadenamiento, pueden derivarse del incumplimiento de una obligación. Estremera v. Inmobiliaria Rac, Inc., 109 D.P.R. 852 (1980).
El mero hecho de que acontezca un accidente no da lugar a inferencia alguna de negligencia. Admor. F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. 711 (2000); Cotto v. C. M. Ins. Co., 116 D.P.R. 644 (1985). Al respecto, el Tribunal Supremo resolvió:
“Para que prospere una acción en daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto u omisión negligente y, además, el elemento de causalidad. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. ” (Bastardillas en el original y citas omitidas).
Admor F.S.E. v. Rosa, supra.
Dicho razonamiento acompañó el destierro de la doctrina del res ipsa loquitur. Ésta hacía referencia a una inferencia permisible de negligencia que autorizaba, pero no obligaba, al juzgador a concluir que hubo negligencia. El Tribunal Supremo expresó que el abandono de esta doctrina importada no creaba un vacío en el *880 derecho de daños puertorriqueño, sino que el Código Civil de Puerto Rico y las Reglas de Evidencia prestan soluciones a casos determinados sin requerir referencia a res ipsa loquitur. Admor F.S.E. v. Rosa, supra.
En los casos de impericia médica, el Tribunal Supremo de Puerto Rico, guiado por los principios del Art. 1802 del Código Civil, ha establecido que un profesional de la salud incurre en responsabilidad si deja de prestar a su paciente aquella atención médica que a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, satisface las exigencias generalmente reconocidas por la propia profesión médica. En otras palabras, el médico en nuestro país viene en la obligación de brindar a sus pacientes la mejor atención médica de acuerdo a los últimos métodos y procedimientos de la medicina moderna de que él pueda tener conocimiento. Castro Ortiz v. Municipio de Carolina, 134 D.P.R. 783 (1994); Rodríguez Crespo v. Hernández, 121 D.P.R. 639 (1988); Pérez Torres v. Bladuell Ramos, 120 D.P.R. 295 (1988); Oliveros v. Abréu, 101 D.P.R. 209 (1973).
No obstante, es norma reiterada en los casos de responsabilidad profesional médica, la presunción de que el médico ha observado un grado razonable de cuidado y atención en la administración del tratamiento. El hecho que el paciente haya sufrido un daño o porque el tratamiento no haya tenido éxito, no es suficiente para derrotar la presunción de pericia del facultativo. Corresponde al reclamante controvertir tal presunción con prueba que demuestre algo más que una mera posibilidad de que el daño se debió al incumplimiento por parte del médico de su obligación profesional. Si de la evidencia surgen varias causas probables del daño, no puede imponérsele responsabilidad al médico, a menos que del examen de la totalidad de la prueba surja que su actuación negligente es la que mayores probabilidades tiene de haber causado el daño. Véanse, Santiago Otero v. Mendez, 135 D.P.R. 540 (1994); Pagán Rivera v. Mun. de Vega Alta, 127 D.P.R. 538 (1990); Rosado Rosado v. E.L.A., 108 D.P.R. 789 (1979); Vda. de López v. E.L.A., 104 D.P.R. 178 (1975).
No es necesario, sin embargo, establecer este hecho con precisión matemática, ni eliminar toda otra posible causa del daño. Sepúlveda de Arrieta v. Barreto, 137 D.P.R. 735, 759-760 (1994); Núñez v. Cintrón, 115 D.P.R. 598, 616-617 (1984); Cruz v. Centro Médico de P.R., 113 D.P.R. 719, 744 (1983); Zambrana v. Hospital Santo Asilo de Damas, 109 D.P.R 517 (1980); Oliveros v. Abréu, supra; Rivera v. E.L.A., 99 D.P.R. 890, 898-899 (1971).
En cuanto a la responsabilidad que tienen los hospitales respecto a sus pacientes, la norma es que dichas instituciones le deben a sus pacientes aquel grado de cuidado que ejercería un hombre prudente y razonable en condiciones y circunstancias similares. López y otros v. Dr. Cañizares, 163 D.P.R. _ (2004), 2004 J.T.S. 165; Blas v. Hosp. Guadalupe, supra; Márquez Vega v. Martínez Rosado, 116 D.P.R. 397, 405 (1985); Núñez v. Cintrón, supra; Crespo v. H.R. Psychiatric Hosp., 114 D.P.R. 796, 800 (1983); Hernández v. La Capital, 81 D.P.R. 1031, 1037-38 (1970).
Para establecer los elementos de su reclamación, el demandante tiene que presentar prueba pericial sobre las normas mínimas de conocimiento y cuidado médico aplicables a esta rama de la medicina; tiene que demostrar que el demandado incumplió con estas normas en el tratamiento del paciente; y demostrar que dicho incumplimiento fue la causa de la lesión que sufrió. Soc. de Gananciales v. Géigel, 145 D.P.R. 663 (1998); Rodríguez Crespo v. Hernández, supra.
Por otro lado, no debemos perder de vista que en el tratamiento de un paciente, el médico posee amplia discreción profesional. Éste no incurre en responsabilidad si el tratamiento que le brinda a su paciente, aun cuando erróneo, está enmarcado en los linderos de lo razonable y es aceptado por amplios sectores de la profesión médica. Ríos Ruiz v. Mark, 119 D.P.R. 816 (1987); Cruz v. Centro Médico de P.R., 113 D.P.R. 719 (1983); Oliveros v. Abréu, supra.
Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, *881 pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Colón Muñoz v. Lotería, 167 D.P.R. _ (2006), 2006 J.T.S. 74; Rodríguez v. Pérez, 164 D.P.R. _ (2005), 2005 J.T.S. 41; McConell Jiménez v. Palau Grajales, 161 D.P.R. _ (2004), 2004 J.T.S. 73; Argüello v. Argüello, 155 D.P.R. 62 (2001); Trinidad v. Chade, 153 D.P.R. 280 (2001).
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra. “[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil, o que por su conducta en la silla testifical se haga indigno de crédito”. Miranda Soto v. Mena Eró, 109 D.P.R. 473 (1980); Alicea v. Sucn. F. Gil Rivera, 87 D.P.R. 789 (1963); Villaronga, Com. v. Tribl. de Distrito, 1A D.P.R. 331 (1953).
Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987).
Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgádor de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Vélez v. Srio. de Justicia, supra.
No obstante, en el ejercicio de su facultad revisora, el foro apelativo se encuentra en igual posición que el foro de primera instancia en cuanto a evaluar la prueba pericial y documental ofrecida. Es por ello que, en lo que respecta a dicha evidencia, está facultado a adoptar su propio criterio en la evaluación de la misma. En cuanto a la prueba pericial, el Tribunal Supremo ha expresado que como foro apelativo, no estamos obligados a seguir indefectiblemente “la opinión, juicio, conclusión o determinación de un perito o facultativo... y que todo tribunal está en plena libertad de adoptar su criterio propio en la apreciación y evaluación de la prueba”. Culebra Enterprises Corp. v. E.L.A., 143 D.P.R. 935 (1997) (citando a Prieto v. Maryland Casualty Co., 98 D.P.R. 594 (1970)) (otras citas omitidas); Véase, Dye-Tex Puerto Rico, Inc. v. Royal Insurance Company of Puerto Rico, 150 D.P.R. 658, 662-663 (2000). (“Los tribunales tienen amplia discreción en la apreciación de la prueba pericial pudiendo, aun, adoptar su propio criterio en la apreciación o evaluación de la misma y hasta descartarla aunque resulte técnicamente correcta”).
IV
Al amparo del marco jurídico antes esbozado, procedemos a resolver la controversia ante nuestra consideración.
Los errores alegados por los apelantes en su recurso de apelación, pueden clasificarse en dos elementos principales: la determinación de ausencia de causa y la apreciación de la prueba. Éstos, a su vez, se dirigen a las dos instancias en las que el tribunal a quo desestimó la Demanda, primeramente a favor de la co-apelada Dra. *882 Fratallone bajo la Regla 39.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2, y posteriormente, a favor del Hospital de Damas, una vez desfilada la prueba por ambas partes.
Por su parte, la apelada, Dra. Frattallone, en su comparecencia ante nos, plantea que los apelantes no presentaron prueba alguna conducente a rebatir la presunción establecida por el ordenamiento jurídico, ni prueba para probar que la rotura del catéter fue el resultado de actos y omisiones de la apelada. Argumenta que el testimonio del perito de los apelantes fue a los efectos de que no medió negligencia o impericia por parte de la apelada. En cuanto a la Regla 39.2 de las de Procedimiento Civil aduce que:
A la luz de la jurisprudencia antes citada, este Honorable Tribunal puede concluir, como cuestión de derecho, que la prueba aportada por la parte apelante, específicamente el testimonio del Dr. Arturo Silvagnoli Collazo, no contravino las presunciones de corrección que tiene a su favor un médico, en este caso la Dra. Frattallone. La parte apelante no presentó evidencia alguna para demostrar que el tratamiento brindado a la paciente Raysa Vega Torres no fue el indicado, a tenor con la buena práctica de la medicina. El hecho de que ocurriera una rotura o fraccionamiento del catéter no da paso automático a calificar el tratamiento que se ofreció o la intervención como negligente. No se presentó prueba alguna por la parte apelante de que la Dra. Frattallone actuó fuera de un marco de cuidado, prudencia y diligencia, según requiere la mejor práctica de la medicina. Por lo tanto, este Honorable Tribunal debe concluir que el Tribunal de Primera Instancia no se equivocó al desestimar la demanda en este caso. Como consecuencia, este Honorable Tribunal debe confirmar la sentencia desestimatoria de la demanda, toda vez que la prueba de la parte apelante no fue suficiente para establecer una reclamación de un caso de daños y perjuicios por impericia médica.
Véase, pág. 18 del Alegato de la Apelada.
Sobre el particular, apuntó el Tribunal de Primera Instancia:

Los demandantes (apelantes) alegan que en este caso se incurrió en mala práctica de la medicina porque a Rayza se colocó el catéter en la vena subclavia izquierda cuando lo correcto era que se colocara en la vena subclavia derecha o en otra vena. Sostienen que también se incurrió en impericia médica durante el proceso de remover el catéter. Examinemos por separado dichas alegaciones a la luz de la prueba presentada.

No existe controversia que la menor no tenía venas periferales accesibles. Las venas periferales son las venas que se encuentran en las extremidades superiores e inferiores del cuerpo humano. Ello obligó al cirujano a colocar el catéter en una de las venas principales, como lo es la vena subclavia. El doctor Carlos Ramos Perea, cuyo testimonio nos mereció entero crédito, declaró que en ausencia de venas periferales accesibles, el catéter puede ser colocado en cualquier vena principal, como lo es la vena subclavia. El doctor Ramos Perea testificó, además, que la determinación de insertar el catéter en la vena subclavia derecha como en la vena subclavia izquierda queda dentro del juicio crítico del cirujano que realiza la venopunción.

En este caso, la venopunción para insertar el catéter en la vena subclavia izquierda fue practicada por el cirujano Rafael Quiñones Torres. Nada hay en el récord médico, ni las partes presentaron prueba alguna, que sostenga una conclusión de que en este caso estaba contraindicado el colocar el catéter en la subclavia izquierda. Tampoco hay evidencia que demuestre que el procedimiento para insertar el catéter en la vena subclavia izquierda fue realizado de forma negligente, o que el mismo provocó que el catéter se fracturara. De 
*883
hecho, luego de colocado el catéter se procedió a tomar una radiografía de pecho a la menor, confirmándose que el catéter había quedado colocado correctamente. De dicha radiografía no surge que el catéter se hubiera roto o fraccionado. Aun si consideráramos que la colocación del catéter en la vena subclavia izquierda estaba contraindicado, la parte demandante (apelante) no demostró que ello fue lo que ocasionó que el catéter se quebrara. No existe tal evidencia.

Por otro lado, tampoco existe evidencia que demuestre que el catéter se partió por negligencia de la Dra. Josephine Fratallone al remover el mismo. A los médicos les asiste la presunción de que el cuidado y el tratamiento que le brindaron al paciente fue el adecuado. Ramos Robles v. García Vicario, 134 D.P.R. 969 (1993); López Delgado v. Cañizares, 2004 J.T.S. 165, 162 D.P.R. _ (2004). Por lo tanto, le corresponde a la parte demandante (apelante) demostrar, mediante preponderancia de prueba, que el médico fue negligente y que dicha negligencia fue el factor que con mayor probabilidad causó los daños reclamados. Cintrón Adorno v. Gómez, 147 D.P.R. 576 (1999).
En este caso no basta con los demandantes (apelantes) demostrar que el catéter se quebró y que parte del mismo quedó alojado en el cuerpo de la menor. El hecho de que el paciente sufra algún daño, no crea ninguna presunción de negligencia por parte del médico. Rodríguez Crespo v. Hernández, 121 D.P.R. 639, 650 (1988). Le correspondía a la parte demandante (apelante) demostrar, mediante preponderancia de prueba, que la Dra. Fratallone fue negligente y que dicha negligencia fue la causa eficiente y próxima que con mayor probabilidad ocasionó que el catéter se quebrara, lo cual en este caso no demostró. Cruz v. Centro Médico de Puerto Rico, 113 D.P.R. 719(1983).

En resumen, los demandantes (apelantes) no pudieron probar que la colocación del catéter en la vena subclavia izquierda, y la posterior remoción del mismo, constituyó mala práctica de la medicina, y que dicha negligencia fue el factor que con mayor probabilidad causó que el catéter se quebrara.

Véase, págs. 36-38 del Apéndice.
La desestimación a favor de la Dra. Fratallone conlleva un análisis del testimonio del perito de los apelantes, a la luz de los requisitos expuestos bajo la Regla 39.2(c) de las de Procedimiento Civil, supra. Dicho precepto dispone lo siguiente:

(c) Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. ...”.

Esta modalidad de la desestimación, también conocida como nonsuit, requiere seguridad en cuanto a la ausencia de oportunidad de prevalecer y de derecho a la concesión de un remedio para el demandante. Si al momento de finalizar el desfile de su prueba, existen elementos que demuestren que bajo alguna circunstancia podría prevalecer la parte demandante, cabe negar la solicitud de desestimación y requerir la presentación de prueba por la parte demandada. De esta manera, el tribunal tendrá una visión más completa de los hechos. Correa v. Díaz Troche, 166 D.P.R. _ (2005), 2005 J.T.S. 165; Colombani v. Gob. Municipal de Bayamón, 100 D.P.R. 120, 122-23 (1971).
*884 El Tribunal Supremo de Puerto Rico ha aclarado que al considerar una moción bajo esta Regla, el Tribunal de Primera Instancia goza de la facultad de aquilatar la prueba presentada por la parte demandante y de hacer las determinaciones de hechos de acuerdo a la credibilidad que dicha prueba le merezca. Rosselló Cruz v. García, 116 D.P.R. 511, 520 (1985); Vda. de Zayas v. Pepsi Cola, 114 D.P.R. 772, 773 (1983); Colombani v. Gob. Municipal de Bayamón, 100 D.P.R. 120, 121-122 (1971); Irizarry v. A.F.F., 93 D.P.R. 416, 421 (1966); véase, además, Romero Arroyo y otros v. E.L.A., 139 D.P.R. 576, 579 (1995).
La determinación de declarar con lugar una moción de este tipo debe de estar precedida de un escrutinio cuidadoso de la prueba. Conforme reseñado, para que proceda la desestimación de una causa de acción bajo la regla, es menester que no exista duda en cuanto a que la parte demandante no tiene derecho a la concesión de remedio alguno. Si la prueba presentada por dicha parte tiende a demostrar que bajo alguna circunstancia ésta podría prevalecer, debe requerírsele al demandado que presente su caso, lo que le dará al Tribunal una visión más completa de los hechos. Lebrón v. Díaz, 166 D.P.R. _ (2005), 2005 J.T.S. 165; Rosselló Cruz v. García, supra; Vda. de Zayas v. Pepsi Cola, supra; Colombani v. Municipio de Bayamón, supra; Irizarry v. A.F.F., supra.
En armonía con la Transcripción de Prueba y el marco normativo anteriormente expuesto, este Tribunal concluye que al finalizar la presentación de prueba por los apelantes surgían suficientes indicios de responsabilidad por parte de la Dra. Fratallone, o al menos de alguna circunstancia favoreciendo a los apelantes, para derrotar una solicitud de desestimación bajo la Regla 39.2 de las de Procedimiento Civil, supra. Como se indicó anteriormente, la situación que da lugar a un nonsuit requiere la ausencia de posibilidades de prevalecer, lo cual convertiría en fútil y contrario a los principios de economía procesal el requerir la continuación de los procedimientos. En el caso de autos, el perito de los apelantes declaró sobre la omisión y negligencia médica de la Dra. Fratallone al remover el catéter del cuerpo de la menor Vega Torres. Específicamente, indicó que la negligencia surgía por el acto de remover un catéter que ella no colocó y en desconocimiento sobre cómo fue colocado. La omisión también se extiende a no reconocer previamente la introducción errónea del catéter por el lado izquierdo, en lugar del lado derecho. Asimismo, el perito declaró sobre la posibilidad que el catéter se haya roto al halarlo muy duro en un esfuerzo por retirarlo. 
Los hechos estipulados por las partes también fortalecen esta posición, al confirmar que el catéter se rompió cuando la Dra. Fratallone intentaba removerlo del cuerpo de la menor Vega Torres. (Véase, pág. 69 del Apéndice.) El control ejercido por la Dra. Fratallone sobre el catéter al removerse y romperse, no constituye necesariamente negligencia médica, pero considerado en conjunción con las otras alegaciones, y la norma vigente que la negligencia pudiese probarse mediante prueba circunstancial, representan elementos lo suficientemente persuasivos para derrotar una solicitud de desestimación bajo la Regla 39.2 de las de Procedimiento Civil, supra, y requerir una visión más detallada de los eventos que dieron génesis a la Demanda incoada.
Por otro lado, en circunstancias como las del caso de autos, el peso de prueba debe razonablemente invertirse 3ara que sean los apelados los que demuestren que la rotura del instrumento no se debió a su negligencia.
Conforme reseñado, se trata del tipo de inferencia anteriormente atendida en nuestra jurisdicción mediante la doctrina de res ipsa loquitur. Cf., Dan B. Dobbs, The Law of Torts, Vol 1, West Group, St. Paul, Minnesota, 2001, págs. 647-650; Annot., Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants — Modern Status, 67 A.L.R.4 544 (2001); Annot., Medical Malpractice: Instrument Breaking in the course of Surgery or Treatment, 20 A.L.R.4th 1179 (1983); Ybarra v. Spangard, 154 P.2d 687 (Cal. 1944).
Aunque dicha doctrina ha sido abandonada en nuestra jurisdicción, Admor. F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. 711, 723 (2000), ello no implica que no pueda inferirse la negligencia de una parte demandada a base de las circunstancias, en casos en que ello resulta apropiado. Colón y Otros v. K-mart y Otros, 154 D.P.R. 510, 521-522 (2001); véase, además, Admor. F.S.E. v. Almacén Ramón Rosa, supra, a la pág. 723 (se llega “a la misma conclusión, por caminos diferentes”).
*885 En la situación de autos, la parte apelante no tenía control del instrumento al momento de la intervención que provocó sus daños, ni podía conocer si éste era defectuoso o fue manejado incorrectamente. Imponerle, a dicha parte, el peso de la prueba para establecer que los apelados fueron negligentes, según lo hizo el Tribunal de Primera Instancia, resulta, a nuestro juicio, irrazonable.
El Tribunal de Primera Instancia debe requerir a los apelados que.establezcan que ellos actuaron de acuerdo a la mejor práctica de la medicina y que ofrezcan una explicación razonable de porqué se rompió el. instrumento, que despeje cualquier incertidumbre sobre su responsabilidad. De no poder hacerlo, somos de opinión que deberían responder por los daños ocasionados.
En conclusión y bajo estas circunstancias, el Tribunal de Primera Instancia debía inferir que los apelados habían actuado negligentemente e invertir el peso de la prueba para requerir a dichas partes que demostraran que los daños sufridos por menor no habían sido ocasionados por ellos.
La igualdad de posiciones que ostenta el foro apelativo en la evaluación de la prueba pericial ofrecida ante el tribunal de instancia, permite la adopción de criterios independientes bajo los cuales resulta errónea la desestimación a favor de la Dra. Fratallone ordenada por el tribunal a quo en el caso de autos.
Cabe resaltar que la presente determinación no establece la satisfacción de los elementos requeridos en una causa de acción de daños ni atribuye responsabilidad a la Dra. Fratallone. En esta etapa, reconoce exclusivamente la necesidad de complementar la prueba desfilada para poder establecer o refutar, a través de un examen más abarcador, la existencia de negligencia y su causalidad adecuada con los daños sufridos por los apelantes. Procede, a nuestro juicio, dejar sin efecto la Sentencia apelada y proceder al desfile de prueba de la Dra. Fratallone, a fin de que demuestre que no incurrió en negligencia en este caso.
Se ordena, por lo tanto, la continuación de los procedimientos en cuanto a la apelada Dra. Fratallone. Asimismo, entendemos que era prematuro la desestimación de la Demanda en contra del Hospital Santo Asilo, hasta tanto no se culmine la presentación de toda la prueba.
y
Por los fundamentos antes expuestos, se revoca la Sentencia apelada. Se devuelve el caso al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 29
1. Cabe indicar que la profundización sobre la idoneidad de colocación del catéter en el lado izquierdo, según las normas aplicables de la medicina, no se llevó a cabo hasta el desfile de prueba por el apelado Hospital de Damas.
2. Transcripción de la vista en su fondo, Caso JDI-1998-0131, págs. 159-60.
3. Aunque, de ordinario, se requiere la presentación de prueba pericial para establecer una causa de acción por mala práctica de la medicina, el Tribunal Supremo de Puerto Rico ha reconocido que existen algunas situaciones donde puede inferirse la negligencia de un facultativo aun en ausencia de prueba pericial específica. Torres v. Rivera Lizardi, 108 D.P.R. 829, 830-831 (1979); Oliveros v. Abréu, supra; Soc. de Gananciales v. Presbyterian Hosp., 88 D.P.R. 396-407 (1963); Ramos Orengo v. La Capital, 88 D.P.R. 315, 329-331 esc. 4 (1963).
*886 VOTO PARTICULAR DEL HON. GERMÁN J. BRAU RAMÍREZ JUEZ DEL TRIBUNAL DE APELACIONES - 2007 DTA 29
San Juan, Puerto Rico, a 19 de enero de 2007
Me uno a la decisión del Panel de revocar la sentencia apelada. Escribo separadamente para expresar mi criterio de que, en circunstancias como las del caso de autos, el peso de prueba debe razonablemente invertirse para que sean los demandados los que demuestren que la rotura del instrumento no se debió a su negligencia.
Se trata del tipo de inferencia anteriormente atendida en nuestra jurisdicción mediante la doctrina de res ipsa loquitur. Cf., Dan B. Dobbs, The Law of Torts, Vol 1, West Group, St. Paul, Minnesota, 2001, págs. 647-650; Annot., Applicability of Res Ipsa Loquitur in Case of Multiple Medical Defendants — Modem Status, 61 A.L.R.4th 544 (2001); Annot., Medical Malpractice: Instrument Breaking in the course of Surgery or Treatment, 20 A.L. R.4th 1179 (1983); Ybarra v. Spangard, 154 P.2d 687 (Cal. 1944).
Aunque dicha doctrina ha sido abandonada en nuestra jurisdicción, F.S.E. v. Almacén Ramón Rosa, 151 D.P. R. 711, 723 (2000), ello no implica que no pueda inferirse la negligencia de una parte demandada a base de las circunstancias, en casos en que ello resulta apropiado. Colón y Otros v. K-mart y Otros, 154 D.P.R. 510, 521-522 (2001); véase, además, F.S.E. v. Almacén Ramón Rosa, 151 D.P.R. a la pág. 723 (se llega “a la misma conclusión, por caminos diferentes”).
En la situación de autos, la parte demandante no tenía control del instrumento al momento de la intervención que provocó sus daños, ni podía conocer si éste era defectuoso o fue manejado incorrectamente. Imponerle el peso de la prueba para establecer que los demandados fueron negligentes, según lo hizo el Tribunal de Primera Instancia, resulta, a nuestro juicio, irrazonable.
El Tribunal de Primera Instancia debe requerir a los demandados que establezcan que ellos actuaron de acuerdo a la mejor práctica de la medicina y que ofrezcan una explicación razonable de por qué se rompió el instrumento, que despeje cualquier incertidumbre sobre su responsabilidad. De no poder hacerlo, entiendo que deberían responder por los daños ocasionados.
GERMÁN J. BRAU RAMÍREZ
Juez de Apelaciones